**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CHRISTOPHER CLIPPARD**
**on behalf of himself and**
**on behalf of all others**
**similarly situated,**

     **Plaintiff,**

v.                           **Case No.:  8:23-cv-2798-SDM-NHA**

**THE FISHEL COMPANY,**

     **Defendant.**
_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**

Pursuant to Fed. R. Civ. P. 23, named Plaintiff, Christopher Clippard ("Named Plaintiff" or "Plaintiff"), files this Unopposed Motion with incorporated Memorandum of Law, seeking an Order: (1) preliminarily approving the settlement agreement (attached as **Exhibit B**) ("Settlement Agreement"); (2) preliminarily certifying a class for settlement purposes only; (3) approving the form and manner of notice to the class; (4) scheduling a fairness hearing for the final consideration and approval of the parties' settlement; and, finally, (5) approving the settlement in a subsequent Order. A proposed Order granting this Motion is attached as **Exhibit A**.

Defendant supports the ultimate relief requested by Plaintiff (together, the "Parties") in this Unopposed Motion and joins Plaintiff in requesting that the Court

approve the Order attached as **Exhibit A**. In support of this Unopposed Motion, Plaintiff respectfully submits the following:

## I.    <u>BACKGROUND AND OVERVIEW OF SETTLEMENT</u>

If approved here, the settlement provides for immediate relief to approximately 67 members of the proposed settlement class ("Settlement Class Members" or "Class Members"). Defendant has agreed to create a common fund of $150,000 for the Class Members. Settlement Class Members will not be required to take any action to receive a check, making it a "claims paid" settlement. The gross payment is approximately $2,238 per Settlement Class Member, with a net amount of about $1,417.55 per Settlement Class Member,[1] an amount consistent with (if not better than) similar WARN Act class action settlements approved federal courts, including here in the Middle District of Florida.[2] Not only that, no settlement funds will revert to Defendant.

Subject to Court approval, attorneys' fees and costs, along with the cost of administration will also be paid from the fund. If any money remains in the Settlement Fund after these distributions and after Settlement Class Members

---

[1] $150,000 − $49,500 (attorneys' fees) − $4,972.80 (settlement administration costs) - $551 (WFC litigation costs) = $94,976.20 / 67 class members= $1,417.55 net payments to class members.

[2] *See, e.g., Benson v. Enterprise Leasing Company of Orlando, LLC* case, M.D. Fla. Case No.: 6:20-cv-891 (Sept. 20, 2022, Doc. 149) (approving class action settlement where WARN Act class members received $734.58); *Molina v. Ace Homecare LLC*, No. 8:16-CV-2214-T-30TGW, 2019 WL 3225662, at *1 (M.D. Fla. June 28, 2019), report and recommendation adopted, No. 8:16-CV-2214-T-27TGW, 2019 WL 3219931 (M.D. Fla. July 17, 2019)(approving class action settlement in which WARN Act class members receive $500 net payments).

have had 60 days to cash their settlement checks, left over funds shall be paid as a *cy pres* donation to a non-profit 501(c)(3) charity, Bay Area Legal Services.

Plaintiff's counsel, who have substantial experience representing class representatives and prosecuting class actions, including WARN Act cases like this, have investigated the law and facts relating to the claims asserted in the Complaint. Based on their experience in representing class representatives and litigating class action cases, Plaintiff's counsel has concluded that this Settlement is fair and reasonable and in the best interests of the Settlement Class. Plaintiff's counsel has given due consideration to the benefits of amicably resolving this case as described herein and the risks and delays associated with further litigation.

In sum, the proposed settlement is fair and reasonable, and preliminary approval by the Court should be granted.

### A. **The Claims and Case Background**

The Complaint in this lawsuit was filed on December 7, 2023. (Doc. 1). Plaintiff's Complaint alleged that Defendant violated the Worker Adjustment and Retraining Notification Act ("WARN Act") by terminating the Named Plaintiff with no advance notice in violation of the WARN Act. *See id*. Defendant has, at all relevant times, denied Plaintiff's allegations and affirmatively asserted its compliance with the law.

Soon after the lawsuit was filed, the action was reassigned to US Magistrate Judge Natalie Hirt Adams. (Doc. 6). Defendant filed its Answer to Plaintiff's Class Action Complaint on February 12, 2024. (Doc. 9). On April 4, 2024, the parties

submitted a Uniform Case Management Report (Doc. 19), which the Court largely granted through its May 3, 2024, Order on the Case Management Report (Doc. 20). This Case Management Report and Order established the deadline to participate in mediation as January 20, 2025. *Id.* In adherence with this deadline, after discussion and conferral between the parties' counsel, the parties filed a Notice of Mediation on May 15, 2024, and subsequently engaged in an arms-length mediation before third party mediator, R. Scott Callen, during which both sides were represented by experienced class counsel, the Parties reached a resolution to this action.

### B. Defendant's Defenses.

Had mediation been unsuccessful, Defendant had available to it a myriad of defenses to Plaintiff's allegations, including defenses to the merits of the case and defenses to damages. Defendant claimed exemption from this requirement under the "unforeseeable business circumstance" exception of the WARN Act by citing the "termination of a client contract and unforeseen business slowdowns" (ECF 9 ¶ 5 at 10), among other affirmative defenses raised by Defendant (ECF 9 ¶¶ 1-9 at 9-11). Defendant also asserted that it had no liability under the WARN Act regardless of the applicability of its affirmative defenses.

As part of the Settlement Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been alleged against it in the action, denies that the claims asserted by Named Plaintiff

4

are suitable for class treatment other than for settlement purposes, and denies that it has any liability whatsoever. However, Defendant agreed to resolve this action through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

## II.    THE PROPOSED SETTLEMENT.

### A.    The Proposed Settlement Class.

The Settlement Agreement defines the proposed Settlement Class as follows: "All former employees of Defendant throughout the United States not given a minimum of 60 days' written notice of termination, and whose employment was terminated on or about May 10, 2023, or within ninety days of that date, as a result of a "mass layoff" or "plant closing" as defined by the Workers Adjustment and Retraining Notification Act of 1988."

### B.    Benefits to the Settlement Class.

The Settlement Agreement, if approved, will resolve all claims of the Named Plaintiff and all Settlement Class Members in exchange for the Defendant's agreement to pay $150,000 to a settlement fund ("Settlement Fund"). Each Class Member is entitled to a gross pro-rata portion of the Settlement Fund totaling $2,238. After deducting the estimated attorneys' fees and litigation costs and the cost for settlement administration, each of the Settlement Class Members are entitled to receive a net payment of approximately $1,417.55. All Class Members will automatically receive a check without having to take any action whatsoever,

making this a "claims paid" settlement. Importantly, no funds will revert to Defendant. Any remaining funds will be paid to *cy pres* recipient Bay Area Legal Services, subject to Court approval.

The Parties did not negotiate attorneys' fees until after all terms related to the size of the common Settlement Fund and the class definitions were agreed upon. Plaintiffs' counsel will file a separate fee petition with the Court addressing fees and costs. Neither settlement approval nor the size of the Settlement Fund are contingent upon the full amount of any requested fees being approved.

### C.   Administration of Notice.

The Parties have agreed to utilize a private third-party vendor American Legal Claim Services, LLC, ("ALCS") to administer notice in this case (the "Settlement Administrator"). The Parties have also agreed that all fees and expenses charged by the Settlement Administrator shall be paid from the Settlement Fund.

### D.   Class Action Fairness Act Notice.

The Settlement Administrator will cause notice of the proposed settlement to be served upon the appropriate federal and state officials, as required by the Class Action Fairness Act of 2005 ("CAFA"), in substantially the form of the CAFA notices attached as **Exhibit E** to the Settlement Agreement.

III.    **PRELIMINARY CLASS CERTIFICATION.**

As part of preliminary approval of the settlement, the Parties respectfully seek certification of the Settlement Class solely for the purposes of settlement, as described here.

### A.    The Settlement Meets the Requirements of Rule 23(e) for Approval.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. This involves a two-step process. *Holman v. Student Loan Xpress. Inc.*, 2009 U.S. Dist. LEXIS 113491, at *7 (M.D. Fla. Nov. 19, 2009). "In the first step of the process, a court should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class." *Smith*, 2010 U.S. Dist. LEXIS, at *5-6. "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Pierre-Val v. Buccaneers Ltd. Partn.*, 2015 U.S. Dist. LEXIS 81518, at *2-3 (M.D. Fla. June 17, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).

Under Rule 23(e)(2), Courts look to whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other. This standard is satisfied here, and the Court should enter an order preliminarily approving the

Class Action Settlement Agreement.

**1.     The Class Representative and Class Counsel Have Adequately Represented the Class.**

There is no question that Class Representative, Christopher Clippard, along with Plaintiff's counsel, adequately represented the class. This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at \*10 (S.D. Fla. Mar. 5, 2013) (citing *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008)).

Here, the adequacy-of-representation requirement has been met. The Named Plaintiff, Christopher Clippard, is adequate given that his interests are equivalent to those of the Settlement Class. He has been actively involved in this case. He participated in the drafting and reviewing of pleadings and participated in the settlement of this case by attending mediation. There is also no obvious conflict of interest between the Named Plaintiff and the Settlement Class. He, along with his counsel, secured a six-figure settlement from a sophisticated and well-represented Defendant in favor of the Class Members he represents. With respect to Class Counsel, the proposed attorneys have extensive class action experience, as detailed in the attached declarations. When, as here, the Parties are represented by counsel who have significant experience in class-action litigation

and settlements, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co.*, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."). Thus, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

### 2. <u>The Settlement Is the Produce of Arm's Length Negotiations Between Experienced Counsel Before a Neutral Mediator.</u>

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement is the product of arm's length negotiations and mediation between the Parties represented by experienced counsel. Indeed, the settlement was negotiated at arm's length between Plaintiff's counsel and counsel for Defendant and was ultimately the result of a successful mediation before a class-action mediator. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

The proposed settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length negotiations between the Parties and their counsel. The Parties and counsel were well-informed of the potential strengths and weaknesses of their positions and conducted good faith negotiations to avoid costly and protracted litigation. Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation, and are clearly capable of assessing the strengths and weaknesses of their respective positions. *Pierre-Val*, 2015 U.S. Dist. LEXIS, at *2 ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks"). Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

In sum, the attorneys who conducted the negotiations for the Settlement Class have many years of experience in conducting complex class action litigation and were thoroughly conversant with the strengths and weaknesses of the case. The decision of Plaintiff's counsel on settlement should be given great deference. This also weighs in favor of approval. *See Gevaerts v. TD Bank, N.A.,* No. 11:14-CV-20744-RLR, 2015 WL 12533121, at *7 (S.D. Fla. Aug. 4, 2015) ("Plaintiffs' counsel was also well-positioned to evaluate the strengths and weaknesses of

Plaintiffs' claims, as well as the appropriate basis upon which to settle them, as a result of similar class action cases Plaintiffs' counsel has brought in the past.")

### 3.   The Settlement Provides Significant Relief to Class Members.

As detailed above, the Settlement will provide substantial relief to Settlement Class Members, satisfying the third Rule 23(e)(2) factor. The settlement requires Defendant to pay $150,000 into a Settlement Fund to resolve the claims at issue. The gross payment is approximately $2,238 per Settlement Class Member, with a net amount of about $1,417.55 per Settlement Class Member. This falls well within the range of reasonableness for settlement purposes in a WARN Act class action settlement.

For example, recently in a case styled *In re The Hertz Corporation, et al.*, Del. Bkt. Ct. Case No.: 20-11218-MFW (Doc. 5862), the United States Bankruptcy Court for the District Court of Delaware approved a WARN Act class action settlement for an amount per class member that was less than what is proposed here. As a second example, in the *Benson v. Enterprise* matter, class members received $734.58 before taxes. *See also, Molina v. Ace Homecare LLC*, No. 8:16-CV-2214-T-30TGW, 2019 WL 3225662, at *1 (M.D. Fla. June 28, 2019), report and recommendation adopted, No. 8:16-CV-2214-T-27TGW, 2019 WL 3219931 (M.D. Fla. July 17, 2019)(approving class action settlement in which WARN Act class members receive $500 net payments). Thus, the recovery in this case of $1,417.55 falls well within the range of reasonableness for settlement purposes.  Also, as in

*Hertz* and *Benson,* one of the core defenses in this litigation include the unforeseeable business circumstance defense to the WARN Act's notice provision.

Notably, all Settlement Class Members will share in the recovery, as they do not need to file a claim form in order to receive a settlement payment. In determining whether a proposed settlement is fair, adequate, and reasonable, the Court should consider several factors, including: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason. Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 56115, at *51-52 (citations and quotations omitted).

As set forth above, continuing the litigation would have been complicated, protracted, and expensive. The risk of the Named Plaintiff being unable to establish liability and damages was also present because of the numerous defenses

12

asserted by Defendant. Likewise, summary judgment had not been briefed. Each of these phases of litigation presented serious risks, which the settlement allows Named Plaintiff and the Settlement Class to avoid. *See, e.g., In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks."). Courts reviewing the issue of fairness have also favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see also In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001).

The gross *pro rata* Settlement Class Member recovery in this settlement is in line with per class member settlement amounts in similar cases. Under the Parties' Settlement Agreement, the Settlement Class Members can quickly realize a portion of their possible statutory damage claims from the Settlement Fund, even if the amount is less than the amount that might have been recovered through successful litigation. Likewise, Defendant caps its exposure at less than it could owe to each Settlement Class Member if it were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties. The Named Plaintiff supports the Settlement. Class Counsel believes that the bulk of the other Settlement Class Members will have a favorable reaction to the Settlement and not object once they have been advised of the settlement terms through the Court-approved Notices.

**4.    The Proposal Treats Class Members Equitably Relative to Each Other.**

The last Rule 23(e)(2) factor is satisfied because the proposed settlement treats Class Members equitably. As set forth above, with the Settlement Class comprised of approximately 67 participants, each Settlement Class Member will receive a gross settlement payment of $2,238, with a net amount of about $1,417.55 per Settlement Class Member. Importantly, this is a "claims paid" settlement. Settlement Class Members do not have to submit claim forms to receive a share of the settlement proceeds. Rather, all Settlement Class Members will simply receive checks after the settlement is deemed effective under the settlement agreement ("Settlement Effective Date" or "Effective Date"). If settlement checks are not cashed, the Settlement Agreement provides for a donation to a *cy pres* recipient, Bay Area Legal Services.

If Plaintiff had chosen to continue to litigate his claims, a successful outcome was far from guaranteed. As discussed below, Plaintiff faced significant risks with respect to liability and damages. To avoid the foregoing risks, it was reasonable for Plaintiff to settle the case at this juncture in order to assure class-wide monetary and prospective relief for Settlement Class Members. *See Bennett v. Behring Corp.,* 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers … to the vagaries of a trial"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

**5.    The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.**

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class Members (at best) and might have resulted in no relief at all. Moreover, Defendant would have appealed any judgment entered against it, resulting in further expense and delay. Indeed, complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig,* 967 F.2d at 493. By entering into the settlement now, Plaintiff saved precious time and costs, and avoided the risks associated with further litigation, trial, and an inevitable appeal.

**IV.    The Proposed Notice of Settlement Is Reasonable.**

In addition to reviewing the substance of the parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all Settlement Class Members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all potential class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice contemplated here.

15

Under the Settlement, each Settlement Class Member will be sent a Short Form Notice of the proposed settlement via U.S. First-Class Mail in the form of a postcard, informing them of the terms of the settlement and their right to object to or opt-out of the settlement, subject to Court approval in its Preliminary Approval Order of both the Short Form and Long Form Notice. The Short Form Notice will direct the Settlement Class Members to the Settlement Administrator's website where additional information will be provided, along with a 1-800 informational number and call center. The content of the Long Form Notice is also reasonable and appropriate. Under Rule 23(c)(2)(B), notice must clearly and concisely state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notices of Settlement include all of this information. In addition, the Notices of Settlement clearly spell out the terms of the proposed Settlement, provide a website address where Settlement Class Members can obtain a copy of the Settlement Agreement and other relevant documents, and include a phone number that they may call if they have any questions. Accordingly, this Court should approve both the Short Form and the Long Form Notice of

16

Settlement, as both the content of the notices and the methods of dissemination are reasonable.

## V.    **Class Certification Is Appropriate Under Rule 23(a) for Settlement Purposes.**

The people who comprise the "Settlement Class" Plaintiff seeks to have certified are "All former employees of Defendant throughout the United States not given a minimum of 60 days' written notice of termination, and whose employment was terminated on or about May 10, 2023, or within ninety days of that date, as a result of a "mass layoff" or "plant closing" as defined by the Workers Adjustment and Retraining Notification Act of 1988."

Besides approving the proposed settlement and the Notices of Settlement, this Court should also certify the proposed Settlement Class for settlement purposes under Fed. R. Civ. P. 23(a). "A class may be certified solely for the purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.,* 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks and citation omitted). Whether to certify a class action rests within the sound discretion of the district court. *Cooper v. Southern Co.,* 390 F.3d 695, 711 (11th Cir. 2004).

However, in the context of a settlement, class certification is more easily attained because the court need not inquire whether a trial of the action would be manageable on a class-wide basis. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification,

a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). Thus, "[t]he requirements for class certification are more readily satisfied in the settlement context than when a class has been proposed for the actual conduct of the litigation." *White v. Nat'l Football League,* 822 F. Supp. 1389, 1402 (D. Minn. 1993) (citations omitted); *see also Horton v. Metropolitan Life Ins. Co.,* 1994 U.S. Dist. LEXIS 21395, at *15 (M.D. Fla. Oct. 25, 1994).

### A.    The Requirements of Rule 23(a) Are Met.

Rule 23(a) sets forth four prerequisites for class certification: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a). Plaintiff has satisfied all four requirements as set forth below.

#### 1.    Numerosity.

Rule 23(a)(1) requires Plaintiff to show that the number of persons in the proposed class is so numerous that joinder of all class members would be impracticable. Here, there are approximately 67 Settlement Class Members. Numerosity is satisfied. *See Williams v. Wells Fargo Bank, N.A.,* 280 F.R.D. 665, 671-72 (S.D. Fla. 2012) ("a class size of more than forty is adequate").

#### 2.    Commonality.

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." In order to satisfy this requirement, there must be "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mowhawk Indus., Inc.,* 568 F.3d 1350, 1355 (11th Cir.

2009) (internal quotation marks and citation omitted). "The commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *In re Checking Account Overdraft Litig.,* 275 F.R.D. 666, 673 (S.D. Fla. 2011) (internal brackets and quotations marks omitted).

As a result of The Fishel Company's alleged violations of the WARN Act, Plaintiff and each putative class member is entitled to assert a claim for wages and to recover damages for violation by The Fishel Company of the WARN Act. All class members had the common experience of losing their jobs without sufficient advance notice as part of a mass layoff. Each class member was terminated without cause, and without sufficient advance written notice, as part of the layoff occurring in May 2023. Because each class member suffered the same injury based on the same common core of salient facts, each class members' claim shares common legal and factual questions. These issues are "susceptible to class-wide proof." *Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004).

In sum, the WARN Act issues central to this case—the timing of the layoffs, the required length of the notice period, and how much notice was practicable—all have common answers. Thus, commonality is met. *See, e.g., Benson v. Enter. Leasing Co. of Orlando, LLC*, No. 6:20-CV-891-RBD-LRH, 2021 WL 2138781, at *4 (M.D. Fla. May 11, 2021).

### 3. Typicality.

The Plaintiff has shown his claims are typical of the other class members. In fact, they are identical. *See Benson v. Enter. Leasing Co. of Orlando, LLC*, No. 6:20-CV-891-RBD-LRH, 2021 WL 2138781, at *6 (M.D. Fla. May 11, 2021) (finding typicality met in WARN Act case based on similar deficient notice claims). Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "A class representative must possess the same interest and suffer the same injury as the class members to be typical under Rule 23(a)(3).

In this case, the legal theory underlying the claims of the putative class members is identical to the named Plaintiff's claim. Here, all claims are based on a nearly identical set of facts and are grounded in the same legal theories. Plaintiff is a member of the proposed class. His claims have the same essential characteristics as the claims of the class at large. Clippard also asserts that he, like the other proposed class members, was not given sufficient notice of the termination and was not otherwise compensated. All class members share these issues.

Aside from questions of quantum of damages, whether Plaintiff and the other putative class members were covered by the WARN Act, and whether The Fishel Company violated the WARN Act, are common to the class representative and each class member. Further, differences in class members' damages do not extinguish typicality. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337

(11th Cir. 1984). Thus, there is nothing to suggest the class representative's claims are somehow atypical of the class. The issues of liability are common to the class, and typical of Plaintiff's claim. Consequently, the typicality requirement of Rule 23(a)(3) has been met for the WARN Act Class.

### 4. Adequacy.

The requirement of adequate representation addresses two issues: (1) whether plaintiff's counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether the named plaintiff has interests antagonistic to those of the rest of the class. *Williams,* 280 F.R.D. at 673. Here, Plaintiff's counsel has extensive experience litigating class action cases, including WARN Act cases. *See generally* Declarations of Luis A. Cabassa, Brandon J. Hill, and Amanda E. Heystek. Moreover, "[t]here is nothing to indicate that [plaintiffs'] interests are in conflict with any members of the class." *Brand v. Nat'l Bank of Commerce,* 213 F.3d 636 (5th Cir. 2000). To the contrary, Plaintiff "share[s] common interests with the class members and seek[s] the same type of relief[.]" *In re Checking Account Overdraft Litig.,* 275 F.R.D. at *7. Accordingly, the adequacy requirement is also met.

### B.    The Requirements of Rule 23(b)(3) Are Also Met.

In addition to satisfying Rule 23(a), Plaintiff must also satisfy Rule 23(b)(3). Under Rule 23(b)(3), a proposed class must satisfy two factors: predominance and superiority. As discussed below, the proposed Settlement Class in this case meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because common

questions of law or fact between the Parties predominate over individual questions, and class action is the best available method for adjudicating this controversy.

### 1. Predominance.

Predominance is governed by an analysis of whether liability may be resolved on a class-wide basis. "Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions . . . In essence, the Court must determine whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Battle*, 2013 U.S. Dist. LEXIS 29263, at *10-11 (internal citations omitted). Though not a determination on the merits, a Rule 23(b)(3) analysis prevents the class from degenerating into a series of individual trials. *Andrews v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996).

In the case at bar, the common legal theory of the WARN Act Fishel Company putative class Plaintiff seeks to have certified is based on—as the proposed name for the class suggests—the WARN Act. Thus, each Class member's "underlying cause of action" is identical. Each Class Member is also entitled to the damages provided by statute. Indeed, courts have noted that "[t]he WARN Act contemplates enforcement by class action. *Butler-Jones v. Sterling Casino Lines, LP.*, 2008 WL 5274384, at *3 (M.D. Fla. Dec. 18, 2008); *see also Weeks- Walker*, 281 F.R.D. at 523, *citing Finnan v. LF Rothschild & Co., Inc.*, 726 F. Supp. 460, 465 (S.D. N.Y. 1989) ("The WARN Act seems particularly amendable to class litigation.").

Litigation of this case will focus primarily on whether The Fishel Company provided sufficient notice to terminated employees, and whether The Fishel Company's unforeseeable business circumstances defense excuses The Fishel Company from liability. Here, there is no evidence or indication that potential class members were treated uniquely with respect to any of these issues. Each class member was treated in the same or similar manner pursuant to a common plan implemented by The Fishel Company. Thus, predominance is satisfied.

### 2.    Superiority.

The Court must also consider whether the superiority requirement has been met. In making this determination, the Court may consider, among other factors: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

Superiority is met with regard to these first two factors under the Federal Rule of Civil Procedure 23(b)(3) analysis. Given the low amount of damages for individual members of the Settlement Class in this case and the fact that there are common issues shared by the Settlement Class Members, the individual interest in controlling the case through separate actions is relatively low.

Furthermore, concentrating the litigation and settlement of this action in this forum is in the interest of judicial economy. "Separate actions by each of the

class members would be repetitive, wasteful, and an extraordinary burden on the courts." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 679 (S.D. Fla. 2011). Thus, superiority is satisfied.

## VI.    <u>CONCLUSION</u>.

For the foregoing reasons, Named Plaintiff Christopher Clippard respectfully asks the Court enter the attached proposed Preliminary Approval Order (*see* **Exhibit A**).

<u>**CERTIFICATE OF GOOD FAITH**</u>

Plaintiff's counsel certifies that, in conformance with Local Rule 3.01(g), he conferred with Defendant's counsel about the issues raised in Plaintiff's Motion. Defendant does not oppose the relief requested herein.

Dated this 24th day of September, 2024.

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 0037061
**LUIS A. CABASSA**
Florida Bar Number: 0053643
**AMANDA E. HEYSTEK**
Florida Bar Number: 0285020
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Avenue, Suite 300
Tampa, FL 33602
Main No.: 813-224-0431
Direct No.: 813-379-2565
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com
Email: aheystek@wfclaw.com
***Attorneys for Named Plaintiff***

24

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 24th day of September, 2024, the foregoing was electronically filed with the Clerk of Court via the CM/ECF system, which will send an electronic notice of filing to all counsel of record.

/s/ Brandon J. Hill
**BRANDON J. HILL**